**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Miguel Angel ALCANTARA, also known as Migeul Angel Alcantara, Defendant–Appellee.**

No. 01–5554.

United States Court of Appeals, Sixth Circuit.

Aug. 8, 2002.

Before MOORE and GILMAN, Circuit Judges; ROSEN, District Judge.[*]

This is a government appeal from a judgment and commitment order in a criminal trial in which the only issues raised go to the application of the sentencing guidelines. The parties have briefed the issues through counsel and have agreed to waive oral argument. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

In 1998, convicted felon Miguel Angel Alcantara was named in a four-count indictment in connection with his acquisition and possession of firearms. Alcantara later pleaded guilty to the indictment, the matter proceeded to sentencing and the district court subsequently resolved disputed guideline sentencing objections in Alcantara's favor. The court found Alcantara guilty of two counts of making false statements in connection with the acquisition of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a), and of two counts of being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a). The district court sentenced Alcantara to an eighty-seven month term of imprisonment to be followed by a three year period of supervised release.

Counsel for the United States raises two issues for appellate review; both issues challenge the district court's treatment of Alcantara's three prior state court felonies in fashioning Alcantara's present base offense level. This court reviews for clear error a sentencing court's factual findings in its application of the sentencing guidelines. *United States v. Jones,* 159 F.3d 969, 980 (6th Cir.1998). The court's legal application of the guidelines is reviewed de novo. *United States v. Moses,* 106 F.3d 1273, 1277 (6th Cir.1997). An examination of the present record and law under this standard shows that the district court's judgment must be affirmed in part and vacated and remanded in part for re-sentencing.

No party disputes that Alcantara was guilty of the crimes charged. Alcantara was under a felon/firearm disability when he purchased two rifles at the Soddy Daisy, Tennessee, Walmart in July of 1997. The prohibition against firearm ownership arose as a result of a 1995 Tennessee state court conviction for two counts of attempted aggravated sexual battery and one count of sexual battery. In addition, Al-

[*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

886

cantara had previously been convicted of the Tennessee felony offense of introduction of drugs into a jail. By his purchase of the firearms, Alcantara violated the prohibition against his ownership of firearms and committed a separate offense by falsely representing that he had not been convicted of a felony. Alcantara admitted to the commission of these crimes and that admission is not at issue in this appeal.

■ What is at issue is the way the district court treated Alcantara's prior sexual battery-related felonies in arriving at Alcantara's base offense level. The probation office prepared a pre-sentence report in which the guideline range of 188–235 months was calculated with a base offense level of thirty-one (including an Armed Career Criminal enhancement pursuant to USSG § 4B1.4(b)(3)(A)) and a criminal history category of V. Counsel for Alcantara objected to treating the sexual battery convictions as three separate episodes of crimes of violence. The district court conducted an evidentiary hearing to resolve both prongs of the objection.

The prosecution attempted to prove the separate, violent nature of the prior sexual battery-related convictions through the testimony of the investigating officer, Hamilton County [Tennessee] Sheriff's Deputy Deborah Morse, and copies of the separate indictments and judgments. Deputy Morse testified that the three indictments resulted from three separate instances of Alcantara having inappropriately touched his daughter, who was under the age of thirteen, at three different locations in and around their dwelling. Deputy Morse was asked to identify the time frame for the three separate incidents in the following exchange:

Q Ms. Morse, in your investigation of these incidences, do you recall the span of time that elapsed between the incidences?

A Not really. I just know that it wasn't the same day. It was over a period of time. I know it was not the same day. I do remember that.

Deputy Morse further testified in the parties efforts to pin down an exact date or dates for the commission of the sexual battery-related offenses.

Q Detective Morse, you indicate that you're fairly certain that these events took place on three separate occasions or three separate dates, correct?

A Correct.

Q And they occurred on or before June 30th of '94? I'm sorry. November 30th. I apologize.

A Okay. Yes.

Q Do you recall whether they were within a three-day span of time? Were they within a seven-day span of time? Was it over a three-month span of time?

A I couldn't tell you. I know that the little girl wasn't able to specify. She was a small child. They don't have dates locked in.

The government also introduced copies of the three separate state court indictments and judgment entries for the sexual battery offenses. The date of the offense listed in each judgment and indictment is "On or before November 30, 1994."

The district court concluded from this evidence that it was impossible to ascertain, with any degree of certainty, whether the three sexual battery-related convictions constituted a single criminal episode, or multiple episodes, for purposes of the USSG § 4B1.4(b)(3)(A) Armed Career Criminal enhancement. The court then reasoned that, as case law directed a sentencing court not to "reach" to find the Armed Career Criminal enhancement applicable, it could not do so for Alcantara. The court also looked to the elements of

the Tennessee sexual battery statute and concluded that Alcantara's offenses were not "crimes of violence" within the meaning of the Career Offender enhancement of USSG § 4B1.1. The court then found Alcantara's guideline range to be seventy to eighty months and sentenced Alcantara to the top of the range.

On appeal, counsel for the government argues that the district court erred in concluding that Alcantara's prior sexual battery-related offenses did not comprise more than a single episode under USSG § 4B1.4(b)(3)(A) and that the convictions were not crimes of violence within the meaning of USSG § 4B1.1.

The record and law support the district court's decision that the government had not shown that Alcantara's three prior sexual battery-related convictions stemmed from more than one episode under USSG § 4B1.4(b)(3)(A). The Armed Career Criminal provision of the guideline is found at USSG § 4B1.4. Section 4B1.4 provides "A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal." In turn, 18 U.S.C. § 924(e)(1) provides for the enhancement of the sentence of "a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another." Whether two prior offenses can be treated as predicate crimes under the Armed Career Criminal Act is not dependent on the number of convictions or the number of victims. *United States v. Brady*, 988 F.2d 664, 668 n. 5 (6th Cir.1993). "[Section] 924(e) enhanced punishment for multiple criminal episodes that were distinct in time." *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir.1991). "An episode is an incident that is part of a series, but

forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration." *Brady*, 988 F.2d at 668 (quoting *Hughes*, 924 F.2d at 1361). "Because Congress intended to punish recidivists, the predicate conduct must amount to separate and distinct transactions in some definable sense." *United States v. Murphy*, 107 F.3d 1199, 1210 (6th Cir.1997). There must be a "reasoned basis" for considering criminal conduct to be a definable event. *Id.* "[I]t should not be necessary to reach to apply this statute; instead, the statute should be applied where the facts demand its application." *United States v. Graves*, 60 F.3d 1183, 1187 (6th Cir.1995).

The district court was presented with evidence that all three sexual battery-related convictions had the same date ("on or before November 30, 1994") on the separate indictments and judgment entries, that all three incidents occurred in and around the same dwelling, and that Deputy Morse admitted that the child / victim could not supply any exact date for the offenses. Given this, coupled with this court's limited scope of review of a trial court's factual findings and admonition not to "reach" to apply the enhanced base offense level of USSG § 4B1.4, the district court's decision in this regard will not be disturbed on appeal.

■ The government's second issue for appellate review is that the district court erred in concluding that the sexual battery-related convictions were not "crimes of violence" so as to subject Alcantara to an automatic base offense level enhancement. This issue is well taken.

USSG § 2K2.1 provides a sliding scale of elevated base offense levels for the commission of the firearm offenses for which Alcantara stands convicted. Section 2K2.1(a)(1)—(4) mandates increased base

offense levels if the defendant committed the present offense after having been convicted of a crime (or crimes) of violence. A "crime of violence" in this context "has the meaning given that term in § 4B1.2(a)." USSG § 2K2.1, comment. (n.5).

In the case at bar, the district court examined the elements of the relevant Tennessee statutes and concluded that, as Alcantara's offenses (improper sexual contact with his daughter who was under the age of thirteen) did not necessarily involve force or the threat of force, his sexual battery-related offenses did not amount to a "crime of violence." The court, however, did not have the benefit of the Sixth Circuit's opinion in *United States v. Campbell*, 256 F.3d 381 (6th Cir.), *cert. denied*, —— U.S. ——, 122 S.Ct. 572, 151 L.Ed.2d 444 (2001). In *Campbell*, the panel categorically held that "criminal sexual conduct involving 'sexual contact' with a person, age 13 to 16, of the same blood affinity presents a 'serious potential risk of physical injury to another'" within the meaning of USSG § 4B1.2(a). *Id.* at 396. The decision in *Campbell*, a case involving virtually identical prior "improper sexual touching convictions" of a defendant committed on his own child, thus calls the sentencing decision on appeal into serious question. Because Alcantara clearly satisfies the prerequisite enhancement requirements of USSG § 2K2.1(a)(2), whether his prior sexual battery-related convictions are counted as a single conviction or multiple convictions (i.e., two prior convictions, the prior sexual assault conviction and the drug conviction), it would appear that Alcantara warrants an enhanced offense level of 24 pursuant to that guideline. Therefore, the district court's judgment must be vacated and remanded for resentencing as indicated.

Accordingly, the district court's judgment is affirmed in part and vacated and remanded in part for recalculation of Alcantara's guideline sentence.